The papers before this court on the appeal in this cause do not show whether the judgment of the Supreme Court, affirming the judgment of the Brooklyn City Court, was rendered at special or general term. The judgment of affirmance is entitled "Supreme Court," and there is nothing further indicating by what court it was pronounced; by or before what judges the court was held; or whether one or more, or any judge or judges were present, does not appear. *Page 74 
But as appeals from judgments of the "City Court of Brooklyn" are to be taken to the Supreme Court at general term (Laws of
1849, 171, § 6; id., 1850, 148, § 1), perhaps it should be inferred that the judgment of affirmance, from which the appeal has been taken to this court, was rendered at general term.
If any estate in the land described in the complaint passed by the lease thereof from William D. Murphy to the plaintiff, Mrs. Darby, it vested in the lessee; for although she was a married woman, yet the lease being to her, and the possession under it having been taken by her, the grant must be held to be to her separate use, and not subject to the control or interference of her husband.
The first section of the act of 1848 for the protection of the property of married women (Laws of 1848, 307), declares that the real or personal property of any "female who may hereafter marry, and which she shall own at the time of marriage, and the rents, c., shall not be subject to the disposal of her husband, c., and shall continue her sole and separate property, as if she were a single female."
The second section provides that "the real or personal property, c., of any female, now married, shall not be subject to the control of her husband, but shall be her sole and separate property," c.
The third section, as amended in 1849 (Laws of 1849, 528), provides that "any married female may take, by inheritance, or by gift, grant, devise or bequest, from any person other than her husband, and hold to her sole and separate use, and convey and devise, real and personal property, and any interest or estate therein, c., with like effect as if she were unmarried, and that the same shall not be subject to the disposal of her husband," c.
It is claimed that the creation of a term for years is neither a "gift," "grant," "devise" or "bequest," and is therefore not covered by the provisions of the third section of the act. Lord COKE says (Co. Litt., 45 b.), that "the words `demise, *Page 75 
lease and to farm let,' are technical expressions to constitute a lease." The term "grant," although anciently used as applicable more particularly to a conveyance of incorporeal hereditaments, or of such property or rights as could not be transferred by livery of seizin, has now a more comprehensive signification, and includes a "demise" or "lease." Thus WOODFALL, in his Treatiseon the Law of Landlord and Tenant (p. 5), says: "Regularly, these things must concur in the making of every good lease: First. As in other grants, so in this, there must be a lessor,c. * * * Fourth If the thing demised be not grantable without a deed, or the party demising be not able to grant without a deed, the lease must be by deed, and, if so, then there must be a sufficient description and setting forth of the person of the lessor and lessee and thing leased; and all necessary circumstances, as sealing and delivery, c., required in othergrants, must be observed." On the same page, this author further says: "The usual words whereby a lease is made are `demise,grant and to farm let,' and whatsoever words amount to agrant may serve to make a lease." (Co. Litt., 301 b.)
The object and intent of the act in question was to give to married women the use, control and right to dispose of all property, of every description, held by them at the time of the marriage, or acquired subsequently, without regard to the manner in which or the form of the instrument by which it was transferred or conveyed, provided such transfer or conveyance was not from the husband; and the act should be so construed as to give effect to such intent. Prior to the passage of the act, a married woman could take, as a gift, or by virtue of a bequest, or under a marriage settlement, and hold separate property, without the intervention of a trustee, and a court of equity would protect her in its enjoyment. It depended upon the intention of the donor as expressed in the instrument by which the bestowal was made, or upon the intention as expressed in the settlement, whether the property was to be held to her separate use. (2 *Page 76 Story's Eq., §§ 1380, 1381, 1382.) The statute has changed the law in that respect, and made all property held by a married woman at the time of her marriage, or acquired by her subsequently, hers absolutely; and has enabled her to use, control, enjoy and dispose of it, independently of her husband, and as her separate property.
The plaintiff, Mrs. Darby, therefore, provided she was capable of taking the lease in question, was entitled in her own right to the possession of the demised premises during the term. The estate granted thereby was her separate property; and as she had the actual possession and was wrongfully ejected by the defendant, she could maintain the action to recover the possession. The action related to her separate property, and her husband was not, therefore, a necessary party (Code, § 114); or, if otherwise, as she was the meritorious cause of action, and as the fact that she had a husband appeared on the face of the complaint, advantage of the non-joinder could only be taken by demurrer. (Code, §§ 144, 417, 148; Hastings v. McKinley,Selden's Notes of Cases in Court of Appeals, October, 1853.)
But the act referred to has not removed all the disabilities of a married woman. She cannot make a contract which can be enforced against her personally, and it is claimed that she cannot take a lease for the reason that she cannot bind herself by covenant to pay the rent. WOODFALL, in his Treatise on the Law of Landlordand Tenant (2d London ed., 137), says: "A feme covert cannot be a lessee, for her free agency is so suspended during coverture that she may plead non est factum to an action on any covenant in the lease; for, evidence that she was covert, at the time of executing the lease, will prove it not to be her deed. For use and occupation of the premises, her baron will be liable." ARCHBOLD, in his treatise upon the same subject (p. 13), says: "All persons whatsoever, even idiots, infants and marriedwomen, may be lessees. If they labor under disability at the time of the making of the lease, they may, upon the removal of *Page 77 
the disability, avoid such lease; but if they continue to occupy the thing demised after the removal of the disability, the lease thereby becomes good and binding upon them." COMYN says (Comyn'sLandlord and Tenant, 49): "All persons are capable of becoming lessees of demisable property; in some cases, however, demises are liable to be avoided in respect to the persons to whom they are made. Infants may accept leases, and upon their arriving at full age may avoid them. So a feme covert may accept a lease which may be avoided by her husband, or by herself after her husband's death, even though he had assented to it."
In Baxter v. Smith (6 Binn., 427), it was held that a lease to a married woman was good, and that the lessor was bound thereby, if the wife performed the stipulations thereof, or if the husband did not dissent therefrom; and that his assent might be inferred from circumstances.
When a lessee, being a married woman, is in possession of demised premises, under a lease, no one but the lessor and those claiming under him can question her right of possession. No others have any interest in the question, whether payment of the rent can be enforced or not. The lease, in such case, is not void, and is voidable only by the parties thereto or their representatives. Strangers cannot avoid it. After payment of the rent reserved, and performance, by the lessee, of all the conditions and stipulations in the lease, the lessor could not avoid it.
In this case, we have the highest evidence that the lessor has not avoided, and has no disposition to avoid, the lease in question, as he prosecutes the action for and as the next friend of the plaintiff, the lessee. In fact, he could not avoid it, while the lessee was not in default in payment of rent or in the performance of the covenants or conditions contained in the lease, and there is no evidence that she was or has been thus in default. The lessee cannot avoid the lease when in possession under it, or when prosecuting an action to regain possession after having been *Page 78 
wrongfully ejected, and, under the provisions of the act of 1848, her husband has no right to avoid it.
I think the action was well brought in the name of the plaintiff by her next friend, without joining her husband, and that, on the trial in the City Court, the plaintiff showed a good cause of action for the recovery of the possession of the premises described in the complaint, and, consequently, that the court erred in nonsuiting her or dismissing her complaint.
If I am right in the above conclusions, it follows that the judgment of the Supreme Court and of the City Court should be reversed and a new trial granted in the latter court.